**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINE BOTTLE RECYCLING, LLC, | Case No. 12-1924 SC |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND GRANTING IN PART AND DISMISSING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION |
| v. | |
| NIAGARA SYSTEMS LLC; SOUTH SHORE SYSTEMS, LLC; S.A. LANGMACK COMPANY; J. CHRIS LANGMACK; CLARK LANGMACK; GEORGE STREKAL; AND RICHARD J. STARK, | |
| Defendants. | |

## I.   **INTRODUCTION**

Now before the Court are the above-captioned Defendants' motions to dismiss Plaintiff Wine Bottle Recycling LLC's ("Plaintiff") First Amended Complaint for failure to state a claim and lack of personal jurisdiction.  ECF Nos. 10 ("FAC"), 12 ("12(b)(2) MTD"), 18 ("12(b)(6) MTD").  The motions are fully briefed.[1]  They are also suitable for resolution without oral

---

[1] ECF No. 45 ("12(b)(6) Opp'n"), 50 ("12(b)(2) Opp'n"), 54 ("Reply ISO 12(b)(6) MTD"), 55 ("Reply ISO 12(b)(2) MTD").  Several declarations that Plaintiff cites in its opposition briefs, ECF Nos. 37, 38, 39, 40, were originally attached to an improper motion, which was denied by the Court, and were never properly

argument.  Civ. L.R. 7-1(b).  For the reasons explained below, the

Court GRANTS Defendant Niagara System LLC's ("NSL") motion to

dismiss for failure to state a claim and GRANTS in part and DENIES

in part the remaining Defendants' motion to dismiss for lack of

personal jurisdiction.[2]  The Court also GRANTS Plaintiff's request

for jurisdictional discovery.  Plaintiff has leave to amend the FAC

to the extent provided below.

**II.   BACKGROUND**

Plaintiff is a Sonoma, California-based company that provides

"renewed wine bottle and delabeling services for the California

winery industry."  FAC ¶ 1.  Defendants manufacture, sell,

distribute, and promote bottle-washing machines.  Id.

Defendant NSL, an Ohio company, contracted with Plaintiff to

supply a bottle-washing machine, as described below.  Defendants

South Shore Systems LLC ("South Shore") and S.A. Langmack Company

(so named in the FAC but now called Niagara Custom Built

Manufacturing Company ("NCB")) (collectively the "Corporate

Defendants") are Ohio companies that worked with NSL in some

capacity that is unclear from the facts currently before the Court.

---

attached or noticed in this matter.  The Court disregards these
declarations because they were not properly put before the Court.
Accordingly, Plaintiff's only declarations properly before the
Court in this matter are the Declaration of Chris Ronson, ECF No.
51 ("Ronson Decl."), and the Supplemental Declaration of Bruce
Stephens, ECF No. 52 ("Suppl. Stephens Decl.").  The Court STRIKES
all references to the improperly filed declarations in Plaintiff's
opposition briefs.

[2] These Defendants argue in the alternative that the Court should
dismiss certain claims against them under Rule 12(b)(6) and
transfer the rest per forum non conveniens, but the Court need not
and does not reach those arguments in this Order because it
resolves the parties' disputes on jurisdictional grounds.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

The "Individual Defendants" in this matter are J. Chris Langmack, Clark Langmack, George Strekal, and Richard J. Stark, all alleged to be officers or directors of the Corporate Defendants.  All of the Individual Defendants reside in Ohio and have no connections to California except through the corporate activity discussed below. J. Chris Langmack Decl ¶¶ 1-7; Stark Decl. ¶¶ 1-8; ECF No. 15 (Clark Langmack Decl.) ¶¶ 1-8; ECF No. 17 (Strekal Decl.) ¶¶ 1-8.

After Plaintiff contacted NSL to order a bottle-washing machine, NSL provided Plaintiff with specifications and a price quotation on February 3, 2010.  ECF No. 10 Ex. A (Proposal for Wine Bottle Renew ("Proposal")).  The Proposal stated that the Niagara Bottle Washer Model 200 ("Niagara Model 200" or the "machine") had a "capacity of 200 bottles per minute" and that it would "wash and rinse these bottles and remove the paper or foil label residue" in a five-stage process, which included no drying step.  Proposal at 1.  The Proposal mentions a "drying oven" but otherwise makes no references to any sort of drying apparatus or operation.  See id. at 2.

On March 3, 2010, Plaintiff contracted with NSL to purchase the Niagara Model 200.  Id. ¶ 18.  Defendants stated that the machine would be delivered "no later than July 30, 2010," apparently in accordance with the Proposal's stated delivery window of 120 to 150 days.  Id. ¶¶ 1, 22; Proposal at 4.  Shortly thereafter, on May 3, 2010, Defendant J. Chris Langmack told Plaintiff that the Niagara Model 200 could not remove labels without the purchase of additional equipment not included in the Proposal, even though Defendants apparently told Plaintiff at some earlier date that it could.  Id. ¶ 21.

3

On or about July 17, 2010, Plaintiff learned that Defendants "were not abiding by the agreed schedule of design, manufacture, and installation" of the bottle-washing system and that Defendants "had not even begun the design of the system," even though Plaintiff had already made preparations to commence bottle-washing operations in anticipation of the arrival of the bottle-washing system. Id. ¶ 22. Defendants Chris and Clark Langmack told Plaintiff on or about October 22, 2010 that Defendants were "working overtime to complete the machine" and offered a variety of excuses, though production had apparently stopped by that date. Id. ¶ 33.

The Niagara Model 200 was installed in Plaintiff's Sonoma facility "[b]eginning in or around January 2011," shortly after which it "broke down, failed, or was inoperable on a daily basis." Id. ¶ 47. It did not, as the Proposal stated, clean 200 bottles per minute, and on or about March 17, 2011, Defendant Stark told Plaintiff that Defendants could "get the speed of the system up, but not where they had said it would be." Id. ¶ 19. Other mechanical problems abounded, creating frustration and expense for Plaintiff. See id. In response to these problems, Defendants told Plaintiff that they would repair the system, but despite Defendants' efforts, the defects continued and worsened. Id. ¶¶ 47-48, 52-54. Further, Plaintiff complains that the Niagara Model 200 did not include a blow dryer, claiming that Defendants promised it would and insisting that the Proposal included "clear reference" to one. Id. ¶ 20. Even so, Defendant J. Chris Langmack apparently told Plaintiff on or about March 18, 2011 that Defendants "had never made a machine for the beverage industry with a dryer." Id.

**United States District Court**
For the Northern District of California

From these facts, Plaintiff begins with what seem to be obvious claims based on its allegations: breach of warranties and negligent design. Plaintiff goes further, however, alleging tort claims in fraud and misrepresentation on the theory that Defendants essentially lied about their plans and capabilities, as well as the Niagara Model 200's ability to remove labels and dry bottles, throughout their relationship with Plaintiff. Accordingly, Plaintiff asserts seven causes of action against Defendants: (1) intentional misrepresentation; (2) fraud in concealment; (3) negligent misrepresentation; (4) negligence in design manufacture and installation of a product; (5) breach of implied warranties of merchantability and fitness for intended use; (6) negligent interference with a contractual relationship; and (7) intentional interference with prospective advantage. Plaintiff has since conceded its "negligent interference" claim. Defendants now move to dismiss Plaintiff's FAC, arguing that Plaintiff fails to state claims for negligent misrepresentation and intentional interference with prospective economic advantage against Defendant NSL, and that the Court lacks personal jurisdiction over the other Defendants.

## III.   DISCUSSION

### A.   Defendants' 12(b)(2) Motion

NSL, the only named defendant with whom Plaintiff formed a contract, does not dispute that the Court has jurisdiction over it. However, Defendants move to dismiss Plaintiff's FAC as to South Shore, NCB, and the Individual Defendants, arguing that the Court lacks personal jurisdiction over those parties. 12(b)(2) MTD at 2. Plaintiff makes numerous arguments, discussed below, as to why the

**United States District Court**
For the Northern District of California

1  Court has jurisdiction over Defendants other than NSL.  See

2  12(b)(2) Opp'n at 8-14.  None are convincing.

3            **1.  Legal Standard for Jurisdiction**

4      Under Rule 12(b)(2) of the Federal Rules of Civil Procedure,

5  defendants may move to dismiss for lack of personal jurisdiction.

6  The Court may consider evidence presented in affidavits and

7  declarations determining personal jurisdiction.  Doe v. Unocal

8  Corp., 248 F.3d 915, 922 (9th Cir. 2001).  Plaintiff bears the

9  burden of showing that the Court has personal jurisdiction over

10  Defendants.  See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154

11  (9th Cir. 2006).  "[T]his demonstration requires that the plaintiff

12  make only a prima facie showing of jurisdictional facts to

13  withstand the motion to dismiss."  Id. (quotations omitted).

14  "[T]he court resolves all disputed facts in favor of the plaintiff

15  . . . ."  Id. (quotations omitted).  "The plaintiff cannot simply

16  rest on the bare allegations of its complaint, but uncontroverted

17  allegations in the complaint must be taken as true."  Mavrix Photo,

18  Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011)

19  (quotations omitted).  Since California's long-arm statute is

20  coextensive with federal due process requirements, Cal. Civ. Proc.

21  Code § 410.10, the personal jurisdiction analysis under state and

22  federal law are the same.

23            **2.  General Jurisdiction**

24      General jurisdiction applies where a defendant's activities in

25  the state are "substantial" or "continuous and systematic," even if

26  the cause of action is unrelated to those activities.  Data Disc,

27  Inc. v. Sys. Techs. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir.

28  1977) (internal quotations omitted).

> For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in "continuous and systematic general business contacts," . . . that "approximate physical presence" in the forum state . . . . This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (citations omitted).  This is a high standard: the Ninth Circuit has regularly declined to find general jurisdiction even where the contacts were quite extensive.  See, e.g., Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993) (citing cases).  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

Plaintiff argues that there are seven bases for exercising general jurisdiction over NCB: (1) NCB's use of a website link that captures site visitors' names for marketing purposes; (2) its use of a California-based web-hosting provider; (3) the fact that California is a major wine production and bottle-recycling state; (4) Defendant J. Chris Langmack's possession of two YouTube (a California-based company) accounts that he uses to demonstrate bottle-washing machines; (5) a corporate registration for a different company listing Defendant J. Chris Langmack's Ohio address as the address for process; (6) a failed negotiation with Plaintiff to set up a California distributorship; and (7) alleged

**United States District Court**
For the Northern District of California

1  sale of a product to a California winery.

2      Plaintiff claims that, in the aggregate, these allegations

3  support a finding of substantial contacts in California such that

4  the Court could lawfully exercise jurisdiction over Niagara Custom

5  Built.  The Court finds otherwise.

6      Plaintiff's arguments about NCB's website, web-hosting

7  provider, and YouTube accounts, points (1), (2), and (4), are

8  contrary to established law because Plaintiff did not show that any

9  of these activities were targeted specifically at California

10  residents.  See, e.g., DFSB Kollective Co. Ltd. v. Bourne, No. C

11  11-1046 PJH, 2012 WL 4051128, at *8 (N.D. Cal. Sept. 13, 2012)

12  (citing Mavrix, 647 F.3d at 1229); American Auto. Ass'n, Inc. v.

13  Darba Enter., Inc., No. C 09-00510 SI, 2009 WL 1066506, at *4 (N.D.

14  Cal. Apr. 21, 2009).  Passive web properties not specifically

15  directed into California are insufficient to establish personal

16  jurisdiction over a defendant.  See id.

17      Under point (3), the fact that Defendants market products that

18  are most useful in California is irrelevant.  Plaintiff has to show

19  that NCB or South Shore actually directed activities into

20  California to such a degree that the Court is justified in

21  exercising general jurisdiction over those Defendants.  Plaintiff

22  fails to do so.

23      Per point (5), Plaintiff states that the Court may properly

24  exercise jurisdiction because NCB registered a corporation,

25  "Corrillion of California," with the California Secretary of State,

26  with Defendant J. Chris Langmack serving as the registered agent

27  for service at an address in Ohio.  12(b)(2) Opp'n at 9.  Plaintiff

28  does not explain which state's jurisdiction the corporation was

organized under, what it did, or whether it is still active.  Nor does it offer any other factors that would justify the exercise of jurisdiction based on an old corporate registration for a non-Defendant.  Plaintiff's allegations are insufficient.

Regarding point (6), Plaintiff alleges that a failed negotiation between NCB and Plaintiff demonstrates NCB had an intent to be a presence in the California market.  This is not enough to show that the Court has general jurisdiction over NCB, especially since Plaintiff itself apparently initiated these discussions.

As to point (7), NCB's alleged "history of sales of its products in the forum (Ferrara Winery)," Plaintiff does not explain how, when, or by whom those sales were made.  This bare allegation is not a basis for jurisdiction.

Accordingly, the Court finds that Plaintiff has failed to show sufficient bases for exercising general jurisdiction over NCB.

### 3.  **Specific Jurisdiction**

Where general jurisdiction is inappropriate, a court may still exercise specific personal jurisdiction depending on "the nature and quality of the defendant's contacts in relation to the cause of action."  Data Disc, 557 F.2d at 1287.  The Ninth Circuit applies a three-prong test when analyzing a claim of specific jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities;

**United States District Court**
For the Northern District of California

and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802.  The plaintiff bears the burden of satisfying the first two prongs, and if he or she fails to satisfy either, specific jurisdiction is not established.  Id.  If the plaintiff satisfies these prongs, the burden shifts to the defendant "to present a compelling case" that the exercise of jurisdiction would not be reasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985).

Plaintiff first argues that NCB and South Shore have met the first prong of Schwarzenegger's specific jurisdiction test, which itself includes two separate tests: the "purposeful direction" test used in tort matters, and the "purposeful availment" test for contract issues.  See Yahoo! Inc. v. La Ligue Contre Racisme et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (discussing the use of the two different standards) (citing Schwarzenegger, 374 F.3d at 802-05).

### a.   **Purposeful Direction**

The Ninth Circuit applies the following three-part test to evaluate specific jurisdiction in tort cases: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Id.  The Ninth Circuit calls this a "purposeful direction" analysis, distinguishing it from the "purposeful availment" analysis in contract cases.  See id.  When considering the first prong, "something more than mere foreseeability" of an effect in the forum

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    state is necessary.  <u>Schwarzenegger</u>, 374 F.3d at 805 (internal

2    citation and quotation omitted).

3        Plaintiff alleges that NCB "long availed itself of personal

4    jurisdiction in California by intentional acts done to promote

5    products that had utility to a market almost exclusively in

6    California."  12(b)(2) Opp'n at 12.  This is insufficient to show

7    purposeful direction.  The market for NCB's products does not

8    matter under this prong, and in any event, Plaintiff contacted NCB

9    to ask NCB to do business in California -- not the other way

10   around.

11       Plaintiff further argues that "[i]f the design and manufacture

12   and installation of the [Niagara Model 200] was deficient, [and] if

13   the representations made by [Defendants] were false (as later

14   admitted by at least one [Individual Defendant]), then [Defendants]

15   would have known that [Plaintiff] would likely suffer the injury in

16   California."  12(b)(2) Opp'n at 12.  This argument is far too

17   attenuated to meet the Ninth Circuit's standard for purposeful

18   direction: Plaintiff has failed to explain how their chain of

19   reasoning actually shows intention or express aiming on Defendants'

20   part.

21       The Court accordingly finds that Plaintiff has failed to show

22   purposeful direction as to its tort claims against Defendants, such

23   that it has failed to meet the standard for exercising specific

24   jurisdiction.

25              **b.    <u>Purposeful Availment</u>**

26       As for purposeful availment, the contract standard for the

27   first prong of the specific jurisdiction test, the Ninth Circuit

28   asks the Court to consider whether a defendant "'purposefully

11

United States District Court
For the Northern District of California

avails itself of the privilege of conducting activities' or

'consummate[s][a] transaction' in the forum, focusing on activities

such as delivering goods or executing a contract." Yahoo, 433 F.3d

at 1206 (quoting Schwarzenegger, 374 F.3d at 802).

Plaintiff first claims that NCB and South Shore functioned as

a single entity with NSL, and since NSL actually formed a contract

in California, NCB and South Shore should be held to have

"purposefully availed" themselves of jurisdiction as well.  See

12(b)(2) Opp'n at 13.  In support of this contention, Plaintiff

states, " "[t]he inclusion of South Shore and [NCB's] entity titles

in e-mails, reports, .pdf drawings sent to [Plaintiff] is

indicative that the two entities were interchangeable."  Id.

Plaintiff's arguments are merely conclusory, and they do not prove

that NCB, South Shore, or NSL were interchangeable.  To do so

Plaintiff must provide factual support for its arguments, not

vague, unsupported assertions.

Plaintiff also argues that "South Shore played a major role in

performing and administering the contract," explaining that South

Shore "provided the engineering and design services" for the

bottle-washing system in California, sending numerous employees to

the site.  Id. (citing Suppl. Stephens Decl. ¶ 8).  The evidence

Plaintiff cites to support these claims, however, states in a

vaguer and more limited fashion that South Shore communicated with

Plaintiff about the project "on many occasions," that South Shore

employees visited Plaintiff's California production facility "at

least three times," and that on a separate occasion, Defendant

Stark (allegedly an employee of both South Shore and NCB) told

Plaintiff that "defendants" were responsible for delayed delivery

**United States District Court**
For the Northern District of California

of the Niagara Model 200 because they "put priority on other customers' projects." Suppl. Stephens Decl. ¶ 8.[3]  Plaintiff also includes emails alleged to be from Defendant Stark, discussing shipments of parts for the Niagara Model 200 from South Shore and information about when the machine would be ready, though the latter email includes an NSL signature line.  Id. Ex. B.

The Court finds that these facts indicate that South Shore was directly involved in designing and delivering the Niagara Model 200 to Plaintiff, thereby "avail[ing] itself of the privilege of conducting activities" in California.  Yahoo!, 433 F.3d at 1206 (quoting Schwarzenegger, 374 F.3d at 802).

### c.   Remaining Factors as to South Shore

The Court therefore proceeds to the remaining two steps of the Ninth Circuit's specific jurisdiction analysis as to South Shore: (2) whether Plaintiff's claim arose out of or relates to the defendant's forum-related activities, and (3) whether the exercise of jurisdiction comports with fair play and substantial justice. Schwarzenegger, 374 F.3d at 802.  "To determine whether a claim arises out of forum-related activities, courts apply a 'but for' test," under which the Court is to consider whether Plaintiff's

---

[3] Defendants object to this portion of the Supplemental Stephens Declaration, arguing that it is irrelevant, lacks foundation, lacks personal knowledge, and is inadmissible hearsay.  ECF No. 56 ("Objections") at 2-3.  The Court OVERRULES this objection.  As Chief Executive Officer of Wine Bottle Recycling LLC, Stephens claims to have personal knowledge of his company's business dealings with South Shore, indicating that his use of "us" or "we" in his Declaration implies that he has knowledge of his company's dealings.  The disputed statements have evidentiary foundation because Stephens stated his familiarity with the company, and the cited emails indicate correspondence as to South Shore's business dealings.  Further, any statement from Defendants here is admissible over a hearsay objection as a statement of a party-opponent.

claim would have arisen but for South Shore's contacts with
California.  <u>Unocal</u>, 248 F.3d at 924.

At this point, Plaintiff's arguments fail.  In discussing this
prong, Plaintiff's opposition brief shifts from discussing South
Shore specifically and simply claims that all Defendants
misrepresented facts regarding caustic chemicals to be used in the
Niagara Model 200; defects in the machine's design, manufacturing,
and installation; and facts about the machine's specifications,
speed, and the time it would take to be built.  12(b)(2) Opp'n at
14.  Plaintiff never specifies how any of these conclusory
statements relate to South Shore's activity, or how "but for" South
Shore's involvement Plaintiff's claims would not have arisen.  Even
resolving all disputes in Plaintiff's favor, the Court simply
cannot evaluate Plaintiff's argue on this point because there are
no facts to consider, only bare legal conclusions.  Plaintiff did
provide evidence about South Shore's shipments of parts to
California, but this does not suffice to show that South Shore was
responsible for any of the negligent design or other torts alleged
in the FAC.

Without facts regarding the true extent of South Shore's
involvement in NSL's undisputed relationship with Plaintiff, it is
not clear whether Plaintiff's causes of action would have arisen
absent South Shore's involvement.  None of the facts Plaintiff
cites in the FAC or its Declarations suggest that South Shore was a
necessary part of the arrangement, e.g., that NSL would not have
supplied the allegedly defective machine or made the statements it
did without South Shore's involvement.

**United States District Court**
For the Northern District of California

1    The Court therefore finds that Plaintiff has failed to show

2    that "but for" South Shore's involvement, its claims would never

3    have arisen.  Since Plaintiff fails to make a satisfactory showing

4    as to this prong, the Court need not discuss whether exercising

5    jurisdiction over South Shore would be reasonable.

6    Because Plaintiff fails to meet the first prong of the

7    specific jurisdiction test as to NCB and the second prong as to

8    South Shore, the Court finds that it does not have specific

9    jurisdiction over those Defendants.

10                  **4.   Jurisdiction Over the Individual Defendants**

11    Plaintiff further claims that the Individual Defendants are

12   not protected by the fiduciary shield doctrine, which protects

13   corporate agents and employees from liability for the corporation's

14   torts, because they "personally directed or participated in the

15   tortious conduct at issue here."  12(b)(2) Opp'n at 16-17 (citing

16   U.S. Liab. Ins. Co. v. Haldinger Hayes, Inc., 1 Cal. 3d 586, 595

17   (Cal. 1970)).  "A corporate officer or director is, in general,

18   personally liable for all torts which he authorizes or directs or

19   in which he participates, notwithstanding that he acted as an agent

20   of the corporation and not on his own behalf."  Coastal Abstract

21   Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th

22   Cir. 1999).

23    Nothing Plaintiff asserts here has merit as to any Individual

24   Defendant.  Plaintiff notes that the Individual Defendants were

25   present at certain discussions or operated machinery during a

26   demonstration, but Plaintiff never moves beyond conclusory

27   allegations that the Individual Defendants' behavior was tortious.

28   No Individual Defendant has sufficient contacts with California, no

United States District Court
For the Northern District of California

emails or statements at issue were made in California, and
Plaintiff never alleges with any specificity that any Individual
Defendant, except J. Chris Langmack, made a fraudulent or otherwise
actionable statement.  With regard to J. Chris Langmack, Plaintiff
never addresses the issue of whether he purposefully availed
himself of or purposefully directed his actions toward California.
The same is true of the other Defendants.  Without such facts the
Court cannot find that it has jurisdiction over the Individual
Defendants.

The conduct Plaintiff describes does not suggest that the
Individual Defendants were "guiding spirit[s]" or "active directing
hand[s]" in the alleged torts such that the Court could justify
exercising jurisdiction over them.  See Matsunoki Grp. v.
Timberwork Oregon LLC, No. C 08-04078 CW, 2009 WL 1033818, at *4
(N.D. Cal. Apr. 16, 2009) (citing Int'l Mfg. Co. v. Landon, Inc.,
336 F.3d 723, 728 (9th Cir. 1964)).  The Court accordingly finds
that Plaintiff has failed to show that the Court has jurisdiction
over any Individual Defendant.

### 5. **Agency/Alter Ego**

Plaintiff asserts that the Court may also take jurisdiction
over South Shore and NCB because they are agents or alter egos of
NSL.  Generally, the existence of a parent-subsidiary relationship
"is not sufficient to establish personal jurisdiction over the
parent on the basis of the subsidiaries' minimum contacts with the
forum."  Unocal, 248 F.3d at 925.  However, "if the parent and
subsidiary are not really separate entities [i.e., alter egos], or
one acts as an agent of the other, the local subsidiary's contacts

**United States District Court**
For the Northern District of California

1  with the forum may be imputed to the foreign parent corporation."

2  Id. at 926 (quotations omitted).

3      To satisfy the alter ego exception to the general rule, "the

4  plaintiff must make out a prima facie case (1) that there is such

5  unity of interest and ownership that the separate personalities [of

6  the two entities] no longer exist and (2) that failure to disregard

7  [their separate identities] would result in fraud or injustice."

8  Id. (quotations omitted).

9      The agency exception applies where "the subsidiary functions

10  as the parent corporation's representative in that it performs

11  services that are sufficiently important to the foreign corporation

12  that if it did not have a representative to perform them, the

13  corporation's own officials would undertake to perform

14  substantially similar services."  Id. at 928 (quotations omitted).

15      Plaintiff does not clarify whether it is asserting that the

16  Court has jurisdiction over South Shore and NCB under the agency or

17  alter ego exception, but its arguments fail under either theory.

18  See 12(b)(2) Opp'n at 15-16.  Plaintiff cites factors courts have

19  considered in alter ego cases, but never cites facts to which those

20  factors might apply.  See id.  Instead, Plaintiff makes a

21  conclusory assertion that NCB and South Shore used NSL as a shell.

22  See 12(b)(2) Opp'n at 15-16.  This is plainly insufficient to

23  satisfy the alter ego exception.  See Doe, 248 F.3d at 925.

24  Similarly, Plaintiff points to no facts suggesting that the agency

25  exception applies.  Plaintiff's arguments about agency and alter

26  ego therefore fail.

27  ///

28  ///

**United States District Court**
For the Northern District of California

### 6.   **Jurisdictional Discovery**

The district court has discretion to allow a plaintiff to conduct jurisdictional discovery.  Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977).  Requests for such discovery should ordinarily be granted "where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." Id. (quotations omitted).  However, a district court need not permit discovery "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants . . . ." Terracom v. Valley Nat. Bank, 49 F.3d 555, 562 (9th Cir. 1995).

Defendants argue that Plaintiff's request for jurisdictional discovery should be denied because Plaintiff relies on an inapposite case to support its request; Plaintiff has failed to establish facts likely to be obtained through discovery that might assist its claims; and despite having had its previous, improper motion for jurisdictional discovery denied and having been instructed on how to proceed in this matter, Plaintiff fails to provide a discrete itemization of discovery requests.  Reply ISO Rule 12(b)(2) MTD at 12-13.

Plaintiff do not respond to these arguments, but they note in their opposition brief that the Court cannot fairly determine whether or not NCB or South Shore are alter egos or agents of NSL -- over which the Court indisputably has jurisdiction -- without additional discovery into matters like undercapitalization or commingling of funds.  See 12(b)(2) Opp'n at 16.  Defendants rightly point out that Plaintiff fails to substantiate its agency

United States District Court
For the Northern District of California

or alter ego theories, but Defendants do not explicitly deny
Plaintiff's allegations, and the core facts as to the Defendants'
interrelationships are controverted.  See Terracom, 49 F.3d at 562
(requests for jurisdictional discovery should be granted if
pertinent jurisdictional facts are controverted).  Plaintiff
deserves the opportunity to show facts pertinent to the agency and
alter ego exceptions.

However, it is entirely unclear whether Plaintiff is also
asking for jurisdictional discovery as to the Individual Defendants
when it states, "Plaintiff here seeks to establish that the
fiduciary shield doctrine does not apply to the individual
defendants by establishing the agency / alter ego exception."
12(b)(2) Opp'n at 24.  The fiduciary shield doctrine is relevant
only to the Individual Defendants, and the agency and alter ego
exceptions only to the Corporate Defendants.  Since none of the
evidence Plaintiff appears to request -- facts about whether NCB,
NSL, and South Shore were in a joint venture, or whether those
corporations were undercapitalized or commingling funds, for
example -- are relevant to the Individual Defendants, the Court
will not grant jurisdictional discovery as to them.

Therefore the Court finds jurisdictional discovery appropriate
as to Plaintiff's alter ego claims against South Shore and NCB.

### 7.   Conclusion as to Defendants' 12(b)(2) Motion

Defendants' 12(b)(2) Motion is DENIED as to NCB and South
Shore and GRANTED as to the Individual Defendants.  Plaintiff has
leave to conduct limited jurisdictional discovery as to whether NCB
or South Shore are agents or alter egos of NSL.  Plaintiff may not
reargue its bases for jurisdiction or seek discovery as to any

**United States District Court**
For the Northern District of California

1   other Defendant.

2       **B.**    <u>**Defendants' 12(b)(6) Motion**</u>

3       Because Plaintiff concedes its claim for negligent

4   interference with contractual relationship, 12(b)(2) Opp'n at 5,

5   the two claims now in dispute as to Defendants' 12(b)(6) motion are

6   for negligent misrepresentation and intentional interference with a

7   prospective economic relationship.  Since the Court found that it

8   lacks jurisdiction over all Defendants except NSL, the following

9   discussion pertains only to that Defendant.

10      **1.**    <u>**Rule 12(b)(6)**</u>

11      A motion to dismiss under Federal Rule of Civil Procedure

12  12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.</u>

13  <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

14  on the lack of a cognizable legal theory or the absence of

15  sufficient facts alleged under a cognizable legal theory."

16  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

17  1988).  "When there are well-pleaded factual allegations, a court

18  should assume their veracity and then determine whether they

19  plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>

20  <u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

21  must accept as true all of the allegations contained in a complaint

22  is inapplicable to legal conclusions.  Threadbare recitals of the

23  elements of a cause of action, supported by mere conclusory

24  statements, do not suffice." <u>Id.</u> (citing <u>Bell Atl. Corp. v.</u>

25  <u>Twombly</u>, 550 U.S. 544, 555 (2007)).  The court's review is

26  generally "limited to the complaint, materials incorporated into

27  the complaint by reference, and matters of which the court may take

28  judicial notice." <u>Metzler Inv. GMBH v. Corinthian Colls., Inc.</u>,

1   540 F.3d 1049, 1061 (9th Cir. 2008) (citing <u>Tellabs, Inc. v. Makor</u>

2   <u>Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

3          **2.   <u>Rule 9(b)</u>**

4          Claims sounding in fraud are subject to the heightened

5   pleading requirements of Federal Rule of Civil Procedure 9(b),

6   which requires that a plaintiff alleging fraud "must state with

7   particularity the circumstances constituting fraud."  <u>See</u> <u>Kearns v.</u>

8   <u>Ford Motor Co.</u>, 567 F. 3d 1120, 1124 (9th Cir. 2009).  "To satisfy

9   Rule 9(b), a pleading must identify the who, what, when, where, and

10  how of the misconduct charged, as well as what is false or

11  misleading about [the purportedly fraudulent] statement, and why it

12  is false."  <u>United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,</u>

13  <u>Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks

14  and citations omitted).

15         **3.   <u>Negligent Misrepresentation</u>**

16         The elements of negligent misrepresentation are: (1)

17  misrepresentation of a past or existing material fact, (2) without

18  reasonable grounds for believing it to be true, (3) with intent to

19  induce another's reliance on the misrepresentation, (4) ignorance

20  of the truth and justifiable reliance on the misrepresentation by

21  the party to whom it was directed, and (5) resulting damage.  <u>Glenn</u>

22  <u>K. Jackson Inc. v. Roe</u>, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001).

23  Negligent misrepresentation claims are subject to Rule 9(b).  <u>See,</u>

24  <u>e.g.</u>, <u>Dietz v. Comcast Corp.</u>, No. C 06-06352 WHA, 2006 WL 3782902,

25  at *6 (N.D. Cal. Dec. 21, 2006) (citing cases).

26         Plaintiff alleges that Defendants misrepresented that they had

27  the experience to construct and furnish a wine-bottle-washing

28  machine, that they were competent and had the experience and

**United States District Court**
For the Northern District of California

1   expertise to produce such a machine that could remove labels from

2   bottles, and that the machine would process 200 bottles per minute.

3   FAC ¶¶ 38-40.  In its opposition to Defendants' 12(b)(2) motion,

4   Plaintiff appears to add that Defendants made various

5   misrepresentations about the amount of caustic chemical necessary

6   to operate the Niagara Model 200 -- an assertion not made in the

7   FAC.  See 12(b)(2) Opp'n at 17-18.  Plaintiff then asserts that

8   Defendants made these representations without knowing if they were

9   true or false, and that Plaintiff relied on those representations

10   and was harmed by them.  Id. ¶¶ 41-43.

11       Plaintiff's pleadings, without more, are formulaic recitations

12   of a negligent misrepresentation claim's elements.  Twombly, 550

13   U.S. at 554-55.  Further, they are not specific enough to satisfy

14   Rule 9(b): Plaintiff did not specify "the who, what, when, where,

15   and how" of the fraud.  Cafasso, 637 F.3d at 1055.  To do so

16   Plaintiff must actually cite statements, provide their speakers and

17   dates, and explain why they were false.  See id.  None of

18   Plaintiff's facts in the FAC or declarations included in the

19   opposition briefs demonstrate the requisite particularity.  In

20   addition to all of these pleading deficiencies, Plaintiff's newly

21   added assertions about Defendants' statements regarding the

22   necessary amount of caustic chemical were improperly raised, and

23   the Court cannot now consider them without converting this Rule

24   12(b)(6) motion to dismiss to a Rule 56 motion for summary

25   judgment.

26       The Court finds that Plaintiff has failed to plead a claim for

27   negligent misrepresentation under Rule 9(b).  Accordingly,

28   Plaintiff's negligent misrepresentation claim is DISMISSED.  The

1    Court gives Plaintiff leave to amend this claim to correct the

2    noted deficiencies.

3            **4.    Intentional Interference with Prospective Economic**

4                    **Advantage**

5        Defendants argue that Plaintiff fails to plead the tort of

6    intentional interference with prospective economic advantage,

7    because Plaintiff's pleading as to this claim "is so bereft of

8    factual content that the Court could not draw any inferences

9    whatsoever about [NSL's] conduct in relation to [Plaintiff's]

10   prospective advantages with third parties."  12(b)(6) MTD at 7.

11       To prevail on this claim, a plaintiff must show the following

12   elements: (1) an economic relationship between the plaintiff and

13   some third party, with the probability of future economic benefit

14   to the plaintiff; (2) the defendant's knowledge of the

15   relationship; (3) intentional acts on the part of the defendant

16   designed to disrupt the relationship; (4) actual disruption of the

17   relationship; and (5) economic harm to the plaintiff proximately

18   caused by the acts of the defendant.  Korea Supply Co. v. Lockheed

19   Martin Corp., 29 Cal. 4th 1134, 1153 (Cal. Ct. App. 2003) (internal

20   citation and quotation marks omitted).

21       Plaintiff fails to plead even the first element here.  Nowhere

22   in the FAC or the opposition brief does Plaintiff clarify what

23   actual, non-speculative economic relationship between Plaintiff and

24   a third party was harmed.  Vague gestures toward "members of the

25   California wine industry" are insufficient.  See FAC ¶ 61.  Nor

26   does Plaintiff ever indicate whether or how Defendants knew of such

27   a relationship, how Defendants' acts could possibly be taken to be

28   intentionally geared toward interfering with Plaintiff's economic

United States District Court
For the Northern District of California

advantage, that the relationship was disrupted, or that Plaintiff was even harmed.  In their opposition, Plaintiff's only support for their claim is that Defendants "cite no authority for their argument that the third party must be specifically named" in this cause of action because they claim that no such authority exists. 12(b)(6) Opp'n at 4-5.  This is false.  "[I]t is well settled in California that a plaintiff must establish an existing economic relationship or a protected expectancy with a third person, not merely a hope of future transactions.  Such an existing relationship must be pleaded to state a claim for intentional interference with prospective economic advantage."  Halton Co. v. Streivor, Inc., No. C 10-00655 WHA, 2010 WL 2077203 (N.D. Cal., May 21, 2010).

Even if Plaintiff were able to plead an existing relationship or expectancy, the Court does not find it plausible that Plaintiff could show intent.  Amendment would be futile and prejudicial. Plaintiff's claim for intentional interference with prospective economic advantage is DISMISSED WITH PREJUDICE.

**IV.   <u>CONCLUSION</u>**

For the reasons explained above, Defendants South Shore Systems LLC, S.A. Langmack Company (a.k.a. "Niagara Custom Built Manufacturing Company"), J. Chris Langmack, Clark Langmack, George Strekal, and Richard J. Stark's motion to dismiss Plaintiff Wine Bottle Recycling LLC's First Amended Complaint for lack of personal jurisdiction is GRANTED as to all Defendants except South Shore Systems LLC and Niagara Custom Built Manufacturing Company, as to whom Defendants' motion is DENIED without prejudice.

**United States District Court**
For the Northern District of California

Plaintiff's request for jurisdictional discovery is GRANTED as to facts relevant to whether the agency or alter ego exceptions apply to Defendants South Shore Systems LLC or Niagara Custom Built Manufacturing Company.  Plaintiff must complete discovery within ninety (90) days of this Order's Signature Date.  Once that discovery is complete, Defendants may again move to dismiss pursuant to Rule 12(b)(2).  Plaintiff may not reargue jurisdiction over any defendants except South Shore Systems LLC and Niagara Custom Built Manufacturing Company.

Plaintiff's negligent misrepresentation claim is DISMISSED with leave to amend.  Plaintiff's intentional interference with prospective economic advantage claim is DISMISSED WITH PREJUDICE.

Plaintiff has thirty (30) days from this Order's signature date to file its amended complaint, or the Court may dismiss the deficient portions of the FAC with prejudice.  Plaintiff's amendments are to be strictly tailored to address the deficiencies described in this Order.  All additional amendments require leave of the Court.  Plaintiff is on notice that everything filed before the Court is subject to Rule 11 of the Federal Rules of Civil Procedure.  Plaintiff is instructed to review the Court's Local Rules with regard to filing documents and formatting briefs.

IT IS SO ORDERED.

Dated: March __18__, 2013

_____

UNITED STATES DISTRICT JUDGE